IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:20-CV-00398-KDB

| | |
|---|---|
| **JOSHUA SMITH,** **Plaintiff,** v. **KILOLO KIJAKAZI, Acting Commissioner of Social Security,**[1] **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Joshua Smith's Motion for Summary Judgment (Doc. No. 17) and Defendant's Motion for Summary Judgment (Doc. No. 19). Mr. Smith, through counsel, seeks judicial review of an unfavorable administrative decision denying his applications for a period of disability and disability income benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

Having reviewed and considered the parties' written arguments, the administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment will be **DENIED**; Defendant's Motion for Summary Judgment will be **GRANTED**; and the Commissioner's decision **AFFIRMED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the Defendant in this suit.

1

## I. BACKGROUND

On August 29, 2018, Plaintiff filed his application for benefits under Titles II and XVI of the Social Security Act, alleging a disability beginning on the same day. (*See* Tr. 10). Plaintiff's application was denied initially and upon reconsideration. (*See id.*). After conducting a hearing on January 14, 2020, Administrative Law Judge Benjamin Burton (the "ALJ") denied Plaintiff's application in a decision dated April 27, 2020. (Tr. 10-18). On November 2, 2020, the Appeals Council denied Plaintiff's request for review. (*See* Tr. 1-3). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Smith has timely requested judicial review pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine if Mr. Smith was disabled under the law during the relevant period.[2] At step one, the ALJ found that Mr. Smith had not engaged in substantial gainful activity ("SGA") since August 29, 2018, the alleged onset date; and at step two that he had the following medically determinable and severe impairments: Spine Curvature, Diabetes Mellitus, and Hearing loss (20 CFR 404.1520(c) and 416.920(c)). (Tr. 13). However, the ALJ found at step

---

[2] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*See* Tr. 13).

The ALJ then determined that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can lift 20 pounds occasionally and 10 pounds frequently. The claimant can only occasionally climb ladders, ropes, scaffolds, stairs, or ramps. He can only occasionally balance, stoop, kneel, crouch, or crawl. The claimant must avoid heat and hazards. He will need a moderate noise level environment only, as described in the Dictionary of Occupational Titles (DOT). The claimant requires a sit or stand option – after 20 minutes of sitting he will need five minutes of repositioning, but the repositioning could occur while at the workstation.

(Tr. 13-14).

At step four, the ALJ found that the Plaintiff was unable to perform his past relevant work as a landscaping laborer, a valve repairer, a clean-up worker, an unloader/loader, a laundry worker, a truck driver, and a fast-food worker. (*See* Tr. 16). At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff — given his age (41), high school education, work experience, and RFC — could perform, including order clerk, charge account clerk, and final assembler. (*See* Tr. 17). Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from August 29, 2018 through the date of his decision. (*See* Tr. 18).

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a

3

physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, ––– U.S. –––, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id*. at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[3] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry,* 952 F.3d at 120 (internal citations omitted);

---

[3] As the Fourth Circuit recently noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty … lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' … [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not. *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction 'is so narrow that it is often very difficult for a court to decide upon which side of the line' evidence falls). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that 'scintilla is Latin for "whatever a judge wants it to mean."' … To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards … but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, No. 19-1972, 2021 WL 667088, at *3 (4th Cir. Feb. 22, 2021).

4

*see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].")

Thus, while the Court must always ensure that proper legal standards are being followed, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry,* 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### IV. DISCUSSION

Plaintiff raises a number of challenges to the ALJ's decision. First, he contends that the ALJ improperly discounted his visual limitations and claimed erroneously that he had not reported flashes or floaters. (Tr. 18). Second, Plaintiff argues that the ALJ erred in failing to find that his diabetic neuropathy and foot ulcer were medically determinable impairments. *Id*. Third, Plaintiff argues that the ALJ failed to acknowledge his limited daily activities, medication for severe pain, and persistent treatment. *Id.* And, finally, he asserts that the ALJ's decision must be remanded on constitutional grounds, specifically that the removal restriction allegedly applicable to the former

5

Commissioner who appointed the ALJ was constitutionally defective because it violated the separation of powers. *Id.*

First, Plaintiff argues that the ALJ's conclusion that his visual limitations were only minimal limitations was not supported by substantial evidence. Plaintiff contends that the ALJ cherry picked and misrepresented the evidence. Plaintiff concedes his vision improved "slightly" with eye injections "at times," as the ALJ notes, but maintains the improvement was not long-lived, and his visual acuity varied. (Doc. No. 18). Further, Plaintiff claims the ALJ failed to acknowledge that in May 2019 an optometrist noted scarring and areas of blood in both of the Plaintiff's eyes and diagnosed bilateral myopia and diabetes with proliferative diabetic retinopathy with macular edema. (Tr. 879-83).

In reaching his conclusion regarding Plaintiff's visual limitations as well as when formulating the RFC overall, the ALJ relied on and found "largely persuasive" the opinions of State agency medical consultants, including Drs. Clayton, Holly and Burgess. (Tr. 15). Dr. Clayton observed that Plaintiff was visually limited only in the right eye as to acuity and depth perception and that his field of vision was unlimited. (Tr. 105-106, 118). Dr. Leah Holly noted that Plaintiff's visual impairment is at 20/40 in one eye and thus it was non-severe (Tr. 131). Dr. Burgess reported that Plaintiff's visual acuity measured by the Snellen chart shows vision with corrective lenses of 20/40 in the right eye and 20/20 in the left eye. (Tr. 606). He further found that "undilated funduscopic examination does reveal some scarring but no clear evidence of hemorrhage or other diabetic or hypertensive retinopathy" (Tr. 107).

Thus, although there may be evidence that could have led the ALJ to finding that Plaintiff's visual limitations were severe, it is not the role of this Court to reweigh such evidence. Indeed, the Court is not permitted to do so. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). As

discussed above, substantial evidentiary support simply means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ based his conclusion on the opinions of the State agency medical consultations and the objective evidence in the record. This satisfies the low burden of substantial evidence. *See Lusk v. Astrue*, No. 1:11 cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence). Moreover, in formulating an RFC, the ALJ is not required to discuss every piece of evidence. *See Reid v. Comm'r of Soc. Sec*., 769 F.3d 861, 865–66 (4th Cir. 2014).

Second, Plaintiff argues that the ALJ's conclusion that his diabetic neuropathy and foot ulcer were not medically determinable impairments was not supported by substantial evidence. Plaintiff argues that the ALJ only noted that his ulcer was superficial, and, despite abnormal medical findings, the ALJ found Plaintiff's diabetic peripheral neuropathy and foot ulcer were not medically determinable impairments. Again, as with the visual limitations, the ALJ relied on the State agency medical consultants. (Tr. 15). Dr. Clayton opined that Plaintiff was capable of light exertional work and had full range of motion without pain in both knees and hips. (Tr. 105-106, 108). Dr. Holly maintained that Plaintiff was able to do light work with an ability to sit or stand for 6 hours in an 8-hour workday. (Tr. 130). As to the specific issue of ulceration of the sole of the left foot, Dr. Burgess found, when examined Plaintiff in January 2019, that Plaintiff's "radial, femoral, dorsalis pedis and posterior tibial pulses are normal and graded at 2+/4, without bruits." (Tr. 607). Dr. Burgess further observed, "there is no evidence of peripheral vascular insufficiency or chronic venous stasis changes such as pigmentation or ulceration." *Id*. Moreover on January 8, 2020, Dr. Humphrey of Mission Wound Healing & Hyperbaric Center reported that Plaintiff's 8-

month-old ulcer had "no signs or symptoms of infection . . . such as increased pain, erythema, induration, fever or change in drainage." (Tr. 927). It is true that in September 2019 Dr. Moore, a podiatrist, opined that the appearance of Plaintiff's "left lower extremity was abnormal." However, the ALJ is solely responsible for assessing an RFC and is not bound to accept findings by treating physicians in the face of other record evidence. *See Russell v. Barnhart*, 58 Fed. Appx. 25, 28-30, 2003 WL 257494 at **3-4 (4th Cir. Feb. 7, 2003) (upholding ALJ's rejection of treating physician opinion on basis that it was "unsupported by the treatment records"); *Byrd v. Apfel*, 1998 WL 911718 at *4 (4th Cir. Dec. 31, 1998) (affirming ALJ's determination that treating source opinion "was not supported by his own clinical findings and objective evidence"). The ALJ considered the conflicting opinions and the objective evidence in the record. He relied on the State agency medical consultants and thus his conclusion was supported by substantial evidence.

Plaintiff's third argument is that the ALJ failed to acknowledge Plaintiff's limited daily activities, medication for severe pain, and persistent treatment. But again, the ALJ is not required to discuss every piece of evidence. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865–66 (4th Cir. 2014). Furthermore, the ALJ did discuss, in both the hearing and written decision, some of the Plaintiff's activities after the alleged onset date. In particular, the ALJ noted the fact that he was able to work part-time. (Tr. 13, Finding 2, Tr. 45, Tr. 226).

Lastly, the Plaintiff argues that the Commissioner's final decision was constitutionally defective. The Court once again[4] finds that under *Collins v. Yellen*, 141 S. Ct. 1761 (2021) a plaintiff must offer some evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. *Id*. at 1787, 1788 n. 23.

---

[4] *See Izaak Boger v. Kilolo Kijakazi*, 1:20-cv-00331-KDB (Oct. 28, 2021); *Gilbert v. Kilolo Kijakazi*, 5:21-cv-00036-KDB (Jan. 5, 2022).

Plaintiff offers no such evidence and therefore the final decision of the ALJ is not constitutionally defective.[5] For all the reasons stated above, the ALJ's decision will be affirmed.

## V. ORDER

Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED;** and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: January 11, 2022

Kenneth D. Bell
United States District Judge

---

[5] Indeed, Plaintiff's constitutional "removal restriction" argument is likely not even applicable to this case because ALJ Burton was appointed by an *Acting* Commissioner of Social Security who could be removed from that office at the President's discretion. *See* 42 U.S.C. § 902(b)(4); *Collins,* 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away."); *see also United States v. Eaton*, 169 U.S. 331, 343 (1898) (holding that where a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official"). Further, the Court need not and does not reach the Commissioner's additional arguments (harmless error, De Facto Officer doctrine and Rule of Necessity) in support of the constitutionality of the ALJ's ruling.